## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
HAZEL HAWKINS,                          )
                                        )
                    Plaintiff,          )
v.                                      )        Civil Action No.  10-907 (ESH)
                                        )
SARI KURLAND,                           )
                                        )
                    Defendant.          )
_____)

## MEMORANDUM OPINION

Plaintiff Hazel Hawkins has filed suit against defendant Sari Kurland alleging that

defendant breached her duty of care as plaintiff's attorney in her representation of plaintiff in

bankruptcy proceedings.  (Complaint, Jun. 2, 2010 [ECF No. 1] ("Compl.") ¶¶ 42-44.)

Defendant has moved for summary judgment, arguing that the doctrine of res judicata bars

plaintiff from bringing suit, or, in the alternative, that she is entitled to judgment on the merits.

(Defendant's Memorandum in Support of Motion for Summary Judgment, Nov. 24, 2010 [ECF

No. 16] ("Mot.") at 9-18.)[1]  For the reasons stated herein, the Court will grant dismissal of this

action based on the doctrine of res judicata.

## BACKGROUND

Plaintiff financed the purchase of her home in 1995 by borrowing approximately $77,000

secured by a deed of trust to SunTrust Mortgage, Inc. ("SunTrust").  (Compl. ¶ 6.)  In 2002,

plaintiff lost her job at the Department of Veterans Affairs, and was still having difficulty finding

---

[1] Res judicata is an affirmative defense which should be raised in a motion to dismiss under Rule
12(b)(6).  *See Stanton v. Dist. of Columbia Ct. of App.*, 127 F.3d 72, 76–77 (D.C. Cir. 1997);
*Jenson v. Huerta*, 828 F. Supp. 2d 174, 179 (D.D.C. 2011).  The Court will therefore treat
defendant's motion as a motion to dismiss under Rule 12(b)(6).

employment in 2005.  (*Id.* ¶¶ 7-8.)  Plaintiff borrowed an additional $7,356.74 from Madison

Esquire and Company, LLC ("Madison"), secured by a second deed of trust on her home.  (*Id.*

¶ 8.)  In early 2006, plaintiff was still unemployed and was in arrears on both trusts.  (*Id.* ¶ 9.)

Plaintiff then retained defendant in April 2006 to file for bankruptcy and to attempt to save her

home.  (*Id.* ¶ 12.)

      Defendant subsequently filed several Chapter 13 plans on behalf of plaintiff, the fourth

and last of which was filed on October 5, 2006.  (*Id.* ¶ 21.)  This plan provided that plaintiff

would pay directly to SunTrust and Madison upon refinancing of her property.  (*Id.*)  After the

filing of the fourth plan, plaintiff continued to pay monthly payments to SunTrust but not to

Madison, and Madison filed a Motion for Relief from Stay in the bankruptcy case, which was

unopposed by defendant.  (Plaintiff's Opposition to Defendant's Motion for Summary Judgment,

Jun. 3, 2013 [ECF No. 38] ("Opp'n") at 6.)  The parties dispute whether defendant had advised

plaintiff not to make these payments to Madison; however, in the hearing regarding the

disgorgement of defendant's fees, the Bankruptcy Court found that there "was no affirmative

advice to the Debtor not to pay the second deed of trust."  (*See id.*; *see also* Transcript of Hearing

on Motion to Disgorge Fees, Jun. 21, 2013 [ECF No. 39-1] ("Tr.") at 42, 78.)  Because plaintiff

was not making her payments to Madison, the Bankruptcy Court granted Madison's Motion for

Relief from Stay in the bankruptcy proceedings.  (Opp'n at 6.)

      On December 6, 2006,[2] Madison notified plaintiff of a pay-off amount of $20,234.36 to

avoid foreclosure.  (*Id.* at 7.)  Defendant introduced plaintiff to Charles Crawford and advised

plaintiff that Crawford and his company, Superior Mortgage Group LLC ("Superior"), could

---

[2] Plaintiff writes that Madison notified plaintiff of the pay-off amount on December 6, *2007*, but
the Court assumes that this is an error, and that the notification was in fact in 2006, as the
foreclosure itself took place on May 22, 2007.  (*See* Opp'n at 8.)

assist her with refinancing the home.  (*Id.*)  On March 13, 2007, plaintiff signed an application to borrow $159,250 from Superior, in exchange for a sale of the property with an option to repurchase.  (*Id.*)  On March 20, 2007, plaintiff and Crawford executed two documents, entitled "Standard Purchase and Sales Agreement" and "Option to purchase real estate."  (*Id.*)  The former document provided that plaintiff would sell the property to Crawford for $199,900, and that "seller shall remit $46,000 to the buyer right after closing for updates and repairs."  (*Id.*)  The latter document granted plaintiff the right to repurchase the property from Crawford for $199,900.  (*Id.*)

On March 22, 2007, defendant introduced plaintiff to Andrew Silverberg who offered to and subsequently did pay the outstanding balance due to Madison in order to halt the foreclosure on the belief that he would be repaid or sold the property by Crawford.  (*Id.* at 7-8.)  On the same day, defendant filed with the Bankruptcy Court on plaintiff's behalf an "Amended Motion for Permission to Sell Real Property, etc." to Crawford.  (*Id.* at 8.)  Later that afternoon, after speaking with the Trustee, plaintiff rescinded the two March 20 agreements with Crawford.  (*Id.*)  On April 4, 2007, counsel for Crawford informed plaintiff that the March 20 agreements were binding purchase agreements.  (*Id.*)  On May 3, 2007, defendant filed a motion to withdraw as plaintiff's attorney, and the motion was granted.  (*Id.*)  Plaintiff retained new counsel, but she was unable to negotiate a settlement with Silverberg, and on May 22, 2007, the property was sold at foreclosure.  (*Id.*)

Following this unfortunate series of events, plaintiff moved to disgorge defendant's attorney's fees which had been paid primarily out of plaintiff's Chapter 13 plan.  (*See* Mot. at 3.)  A hearing was held on February 20, 2008, to "determine the reasonableness of [defendant's] fees in exchange for legal representation in the case."  (Tr. at 76.)  The Bankruptcy Court heard

testimony from both plaintiff and defendant, and found that the "only issue is whether . . . the services rendered by Ms. Kurland resulted in unreasonable compensation because of inadequacy of representation." (*Id.* at 77.)  The Court held that although it had doubts about the adequacy of representation, the record did not permit the judge to find that there was inadequate representation.  (*Id.* at 77-78.)

Specifically, while the Bankruptcy Court was rightly critical of defendant's having left the business negotiations of the sale of the property to plaintiff, defendant's actions were still "a good faith effort to structure something that would allow the Debtor to save her house." (*Id.* at 89-90.)  The Court emphasized that "[t]o the extent that an attorney gives business advice or draws back and doesn't engage in business advice, that doesn't amount to malpractice.  The area of expertise of an attorney . . . is to give sound legal advice." (*Id.* at 90.)  The Court found that there was no evidence that defendant had given business advice, but instead, she had only "acted as the implementer of the strategy from a legal standpoint by filing the notice of the proposed sale." (*Id.* at 91.)  For these reasons, the Bankruptcy Court concluded that the fees were not unreasonable.  (*Id.* at 94.)

## ANALYSIS

### I.   RES JUDICATA

Because the Bankruptcy Court ruled that the fees for defendant's representation of plaintiff were not unreasonable, and the instant claims arise out of the same nucleus of facts, plaintiff's claims are barred by the doctrine of res judicata.

"'Under the doctrine of res judicata, or claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the

merits, (4) by a court of competent jurisdiction.'" *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009) (quoting *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006)).  "[C]laim preclusion is . . . intended to prevent litigation of matters that *should have been* raised in an earlier suit." *Natural Res. Def. Council v. E.P.A.*, 513 F.3d 257, 261 (D.C. Cir. 2008) ("*NRDC*") (internal quotation marks omitted).  For this reason, "[r]es judicata bars relitigation not only of matters determined in a previous litigation but also ones a party could have raised." *Capitol Hill*, 569 F.3d at 491 (internal quotation marks, edits, and ellipsis omitted).  In other words, "'claim preclusion precludes the litigation of *claims,* not just *arguments.*'"  *Id.* at 490 (quoting *NRDC*, 513 F.3d at 261).  The principles of res judicata apply to the decisions of bankruptcy courts.  *Katchen v. Landy*, 382 U.S. 323, 334 (1966); *see also Allied Pilots Ass'n v. Pension Benefit Guar. Corp.*, 334 F.3d 93, 97 (D.C. Cir. 2003) (treating a bankruptcy court's final judgment on the merits as res judicata in later district court proceedings).

The third and fourth elements of res judicata are not in dispute in this case; the Bankruptcy Court entered a final judgment rejecting plaintiff's claim for disgorgement of legal fees on the merits, and it had proper jurisdiction over the proceedings.  (Tr. at 94.)

With respect to the first element, the parties are also the same as in the previous proceeding.   Plaintiff argues that the prior case was not between plaintiff and defendant, but between plaintiff and third-party creditors.  (Opp'n at 13.)  While there were proceedings between plaintiff and third-party creditors, the issue of fee-disgorgement (and the judge's ruling on defendant's representation) was specifically between plaintiff and defendant.  (*See* Tr. at 1.) Therefore, the parties are the same in this proceeding.

With respect to the second element of whether the claim is the same, courts only require that the new claim and the previous claim share an "identity." That is, "there is an identity of the causes of action when the cases are based on the "same nucleus of facts," because "it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 574 F. Supp. 2d 143, 149 (D.D.C. 2009), *aff'd*, 569 F.3d 485 (D.C. Cir. 2009) (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)). To make this determination, courts consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Apotex, Inc., v. F.D.A.*, 393 F.3d 210, 217 (D.C. Cir. 2004) (citing *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 n.5 (D.C. Cir. 1983)).

Plaintiff argues that the claim is not the same, as the Bankruptcy Court had only ruled on fee payment and not malpractice. (*See* Opp'n at 13.) First, the transcript indicates that plaintiff did raise the claim of malpractice by alleging that defendant "misrepresented" her and that she felt "falsely represented by [defendant]." (Tr. at 76.) The Bankruptcy Court addressed this claim in its conclusion that defendant's failure to give sound legal advice "doesn't amount to malpractice." (*Id.* at 90.)

Second, even if plaintiff did not expressly raise legal malpractice, she did clearly challenge the adequacy of defendant's legal representation, a claim that is based on the same nucleus of operative facts as her current malpractice claim. *See Capitol Hill*, 574 F. Supp. 2d at 149. In *Capitol Hill*, the plaintiff had brought a fee application dispute to a bankruptcy judge, and the judge decided that the fees were acceptable. *See id.* The plaintiff's later claim of

malpractice arising out of the bankruptcy proceedings was held to be barred by res judicata because it arose out of the same nucleus of facts as the fee dispute.  *Id.*  The Court held that because the plaintiff's claim for malpractice arose from the same facts as the claim for fees, the plaintiff should have raised that claim during the bankruptcy dispute.  *Id.* at 149-50; *see also In re Capitol Hill Grp.*, 447 B.R. 387, 400 (2011) (finding that bankruptcy statutes "require that the bankruptcy judge . . . find that legal representation was adequate before granting a fee application").  Furthermore, the Court in *Capitol Hill* noted that even if the bankruptcy judge had not inquired into the adequacy of representation during the fee dispute, "judicial analysis of an argument is not a prerequisite for the application of res judicata."  *Capitol Hill*, 574 F. Supp. 2d at 149 (quoting *NRDC*, 513 F.3d at 261).  As in *Capitol Hill*, plaintiff here is raising a legal malpractice claim that arises from the same nucleus of facts that gave rise to the claim for disgorgement of fees, and therefore, the claim is the same for the purposes of res judicata.[3]

## CONCLUSION

Because the Court concludes that plaintiff's claim is barred by res judicata, defendant's motion will be granted.  A separate Order accompanies this Memorandum Opinion.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

DATE:  July 12, 2013

---

[3] Because all of the elements of res judicata are fulfilled, the Court need not address defendant's alternative grounds for dismissal.